# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

MICHAEL WERB,

        Plaintiff,

v.

RELIASTAR LIFE INSURANCE
COMPANY and GOODRICH
CORPORATION,

        Defendants.

Case No. 08-CV-5126 (PJS/JJG)

ORDER

---

Mark M. Nolan, NOLAN MACGREGOR THOMPSON & LEIGHTON, and Clayton
Hearn, HEARN LAW FIRM, for plaintiff.

William D. Hittler, NILAN, JOHNSON, LEWIS, PA, for defendants.

Plaintiff Michael Werb was employed as a controller by defendant Goodrich Corporation

("Goodrich").  Werb participated in Goodrich's long-term disability ("LTD") benefit plan (the

"plan").  Goodrich funded the plan through an insurance policy (the "policy") issued by

defendant ReliaStar Life Insurance Company ("ReliaStar").  The plan is governed by the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461.

Werb was involved in a work-related car accident and as a result experienced ongoing

pain in his back, neck, and shoulder.  He applied for LTD benefits, but ReliaStar, as the plan

administrator, denied his claim on the grounds that Werb had released his claim in a settlement

agreement with Goodrich.  Werb commenced this ERISA action to challenge the denial.

After this litigation had been pending for almost a year, ReliaStar informed Werb, out of

the blue, that it was voluntarily reconsidering its decision to deny his claim for LTD benefits.

A couple of months later, ReliaStar again denied Werb's claim for benefits, not only because ReliaStar continued to believe that Werb had released his claim in the settlement agreement, but also because ReliaStar concluded that Werb had failed to establish that he was disabled. Briscoe Aff. Ex. U at RS1566. ReliaStar characterized its decision as an "alternative decision on [Werb's] LTD claim based on a review of the medical information." *Id*. at RS1567. The "medical information" included, most critically, a report that had been prepared by an expert retained by the law firm representing ReliaStar in this litigation.

This matter is now before the Court on the parties' cross-motions for summary judgment. For the reasons discussed below, Werb's motion is denied, and defendants' motion is granted insofar as it applies to Goodrich but denied insofar as it applies to ReliaStar.

## I. BACKGROUND

### *A. Werb's Injury*

Werb was traveling to a work-related dinner on April 30, 1997, when the automobile in which he was a passenger crashed. Werb felt no immediate pain, Briscoe Aff. Ex. C at RS0530, and he returned to work the next day, Briscoe Aff. Ex. K at RS1427. Shortly thereafter, however, Werb sought treatment from his primary-care physician for back pain and a muscle pull. Briscoe Aff. Ex. W at RS0397. Werb seems to have worked his normal hours for several months after the accident while continuing to receive treatment for his ongoing pain. In August 2007, however, Werb reported to one of his doctors that he had cut back at work from the 60 hours per week that he had been working to fewer than 50 hours per week. Briscoe Aff. Ex. W at RS0412.

Werb's pain continued, and on February 18, 1998 — nearly ten months after the car accident — Werb began a medical leave of absence from Goodrich to pursue further treatment. Briscoe Aff. Ex. W at RS0493. Werb's doctor anticipated that Werb would not return to work before October 1998, *id.*, but Werb returned to work on May 20, 1998, several months earlier than expected. Briscoe Aff. Ex. U at RS1569; Briscoe Aff. Ex. N at RS0959. Werb did not last long. On July 30, 1998 — just a couple of months after Werb returned to work — Werb was terminated after he continued to struggle with the limitations imposed by his medical condition. Briscoe Aff. Ex. U at RS1569.

### B. LTD Plan

Under the Goodrich plan, a participant is entitled to LTD benefits if he is "continuously totally disabled" for the first six months after the onset of disability. Briscoe Aff. Ex. A ("Policy") at RS1463-64. This six-month period is known as the "Benefit Waiting Period." *Id.* For purposes of the Benefit Waiting Period, the plan defines "totally disabled" to mean that the participant is "unable to do the essential duties of [his] own occupation." *Id.* at RS1469. A participant does not receive LTD benefits during the Benefit Waiting Period. *Id.* at RS 1464. (Typically, a participant would receive benefits during the waiting period under a short-term-disability policy.)

Following expiration of the six-month Benefit Waiting Period, the participant receives LTD benefits for the next 18 months as long as he remains unable to perform the essential duties of his own occupation. *Id.* at RS1469. Following expiration of that 18-month period, the participant can continue to receive LTD benefits, but only if he is "unable to work at any occupation [that he is] or could reasonably become qualified to do by education, training or

experience." *Id.*  The plan reserves to ReliaStar "final discretionary authority" to determine

eligibility and interpret the policy terms.  Policy at RS1471.

### C.  Werb's Application for LTD Benefits

Werb claims that he inquired about submitting an application for LTD benefits shortly

before he was terminated in July 1998, but he was told by Goodrich that he should postpone

applying for LTD benefits until he had first resolved other "offsets," such as worker's

compensation and Social Security disability benefits.  Briscoe Aff. Ex. R at RS0047.

Werb had filed a worker's-compensation claim back on September 7, 1997, while he was

still employed by Goodrich, in connection with the injuries that he suffered as a result of the car

accident.  Briscoe Aff. Ex. W at RS0422.  He later hired an attorney to help him pursue that

worker's-compensation claim.  Werb hired another lawyer to help him pursue automobile-

liability claims against Goodrich or its automobile insurer.  (The record is not clear about the

details of these claims.)

Goodrich and Werb agreed to settle the worker's-compensation claim in late 2001.  The

original version of the release, which Werb signed on October 1, 2001 but which Goodrich never

signed, specifically excluded Werb's automobile-liability claims from the scope of the release.

Briscoe Aff. Ex. R at RS0045.  A later version of the release was signed by both parties — Werb

on January 21, 2002, and Goodrich on February 1, 2002.  Briscoe Aff. Q at RS 0041.  The

revised version increased Werb's total compensation by $1,500, eliminated the automobile-

liability exclusion (i.e., brought the automobile-liability claims within the scope of the release),

and added a new provision entitled "Full And Final Settlement Of Other Claims."  Briscoe Aff.

Ex. Q at RS0037-38.  The new provision stated that Werb "fully and forever release[d],

acquit[ted] and discharge[d] Goodrich and its insurers from any and all liability . . . on any and all claims . . . against Goodrich, or its insurers, including, but not limited to claims . . . pursuant to ERISA." *Id.* at RS0038.

Three years later, Werb resolved his claim for Social Security disability benefits. Briscoe Aff. Ex. W at RS1400. Having exhausted all "offsets," Werb finally submitted an application for LTD benefits in connection with his 1997 automobile accident. Briscoe Aff. Ex. K at RS1427. His LTD application was dated October 30, 2005, but for some reason was not received by ReliaStar until March 2006. *Id.*

In a letter dated August 2, 2006, ReliaStar denied Werb's claim for LTD benefits because it concluded that Werb had not established that he was totally disabled from his own occupation during the six-month Benefit Waiting Period that began on August 1, 1998. Briscoe Aff. Ex. M at RS0988, RS0991. ReliaStar noted that the medical information submitted by Werb "demonstrates no objective findings on physical examination or radiographic studies to support the level of symptoms or the degree of impairment" claimed by Werb. *Id.* at RS0991.

Werb appealed on January 30, 2007. Briscoe Aff. Ex. N at RS0957. He argued, among other things, that the "date of total and permanent disability" was not August 1, 1998 (his last day of work before being terminated, at least according to ReliaStar[1]) but February 18, 1998 (his last day of work before starting his medical leave of absence). *Id.* Werb submitted extensive written evidence in support of his claim that, as of February 18, 1998, he was totally disabled. This evidence included a 31-page submission from Werb's attorney providing a narrative description

---

[1]ReliaStar said that Werb had "left work on August 1, 1998." Briscoe Aff. Ex. M at RS0988. In fact, though, it appears that Werb's last day of work was July 30, 1998. Briscoe Aff. Ex. V at RS0047; Briscoe Aff. Ex. U at RS1569.

of the evidence supporting Werb's claim of disability and annotating ReliaStar's denial letter with additional explanation and purported corrections, *id*. at RS0957-87; a four-page opinion letter from Dr. Thomas Wyne, a family practitioner whom Werb began seeing in September 2001, commenting critically on the conclusions drawn by ReliaStar's medical examiner and enclosing a January 2007 list of work restrictions and a daily pain-management program for Werb, *id*. at RS0994-98; copies of relevant medical records, *id*. at RS0999-1004; relevant medical literature, *id*. at RS1005-34 and RS1043-56; and a copy of Werb's 2002 release, *id*. at RS1035-40.

In a follow-up letter dated March 1, 2007, Werb reiterated his position that February 18, 1998 — not August 1, 1998 — was the date of the onset of his disability. Briscoe Aff. Ex. W at RS0921. In Werb's view, his Benefit Waiting Period was broken up into two segments: The first segment was his medical leave, which began on February 19, 1998, and continued until he returned to work on May 20, 1998. Briscoe Aff. Ex. U at RS1569.[2] The second segment began after he was terminated by Goodrich on July 30, 1998. *Id*. According to Werb's calculations, his six-month Benefit Waiting Period concluded on October 31, 1998. *Id*.

As noted, when ReliaStar denied Werb's claim for LTD benefits in August 2006, ReliaStar thought that Werb was claiming that he had become disabled on August 1, 1998. But Werb's appeal made clear that he was claiming that he had become disabled on February 18, 1998. For that reason, ReliaStar's appeal committee vacated the claim department's denial of

---

[2]Pursuant to the policy, time worked after the disability date is excluded from the Benefit Waiting Period. Policy at RS1464.

Werb's claim and remanded Werb's claim, so that the claim department could consider whether Werb was disabled as of February 18, 1998. Briscoe Aff. Ex. O at RS0382-83.

On remand, ReliaStar's claim department again denied Werb's claim. This time, however, the denial had nothing to do with the evidence regarding Werb's medical condition. Indeed, the claim department was careful to express no opinion about whether Werb was disabled. The claim department instead denied Werb's claim based solely on the settlement agreement that Werb had signed on January 21, 2002. As the claim department read that agreement, Werb had released his claim for LTD benefits, and thus ReliaStar had no obligation to pay such benefits. Briscoe Aff. Ex. P at RS0087.

Werb appealed this new determination, arguing that denying his claim on the basis of the release was improper. Briscoe Aff. Ex. R at RS0028. ReliaStar's appeal committee upheld the denial in a letter dated July 16, 2008. Briscoe Aff. Ex. S at RS0024. The appeal committee made clear in its letter that its decision to deny Werb's claim for LTD benefits was based solely on the release and that "the claim department has yet to make a determination on [Werb's] disability." *Id*.

Werb commenced this lawsuit on September 5, 2008. Docket No. 1. At first, the lawsuit proceeded unremarkably. The parties participated in a pretrial conference and made initial disclosures, and ReliaStar produced the administrative record. Then, however, the litigation took an unusual turn. On August 8, 2009 — nearly one year into the litigation — ReliaStar suddenly informed Werb that it had decided to undertake a "voluntary appeal review" focused on the medical evidence regarding Werb's condition. Briscoe Aff. Ex. W at RS1632. ReliaStar informed Werb that he could submit any relevant and previously unconsidered information

within 30 days, and that the evidence would be considered as part of the "voluntary appeal review." *Id*.

Werb was understandably wary about ReliaStar's surprise announcement that it had decided to review his claim again. In a series of letters between Werb's attorney and ReliaStar concerning the basis, scope, and legitimacy of the newly announced review, ReliaStar admitted that it had no guidelines or protocols for a "voluntary appeal review," and that the procedure was not addressed in any claim manual or in the policy itself. *Id*. at RS1628. ReliaStar asserted that a "voluntary appeal review" was conducted at the discretion of the appeal committee on a case-by-case basis and that the committee followed the same guidelines that it followed when acting on traditional appeals of claim-department decisions. *Id*. at RS1604.

As part of its "voluntary appeal review," ReliaStar sent Werb a copy of a March 2009 independent medical record review conducted by Dr. Andrea Wagner — a review that had been done for the law firm representing ReliaStar in this litigation. Briscoe Aff. Ex. T at RS1612-18. ReliaStar candidly admitted that it had received Dr. Wagner's review "from counsel." Briscoe Aff. Ex. W at RS1611. ReliaStar informed Werb that Dr. Wagner's report would be used by the appeal committee in its "voluntary appeal review," and ReliaStar gave Werb 14 days to respond to Dr. Wagner's report. *Id*. Werb responded by submitting, among other things, a letter from Dr. Wyne dated September 24, 2009. Briscoe Aff. Ex. V. at RS 1590-93.

ReliaStar concluded its "voluntary appeal review" and informed Werb by letter dated October 19, 2009 that it was upholding its previous denial of Werb's LTD claim. As described above, ReliaStar had previously denied benefits to Werb solely on the ground that he had released his claim for LTD benefits when he signed the settlement agreement with Goodrich on

January 21, 2002.  Now, however, ReliaStar said that it was also denying Werb's claim on the ground that he had not demonstrated that he was totally disabled "throughout and beyond the Benefit Waiting Period as required under the terms of the BF Goodrich LTD Policy."  Briscoe Aff. Ex. U at RS1566.  ReliaStar characterized its decision in the "voluntary appeal review" as an "alternative decision on [Werb's] LTD claim based on a review of the medical information."  *Id*. at RS1567.

Ten days after informing Werb of its "alternative decision," ReliaStar moved for summary judgment.  Docket No. 13.  In seeking summary judgment, ReliaStar relied both on its earlier legal assessment that Werb had released his claim for LTD benefits and on its later medicolegal assessment that Werb had not demonstrated that he was totally disabled.  Werb cross-moved for summary judgment, arguing that the release did not bar his claim, and that ReliaStar's medical assessment was not properly before the Court.

## II.  ANALYSIS

### A.  Standard of Review

Werb challenges the decision made by ReliaStar in its capacity as the plan administrator to deny his claim for LTD benefits.  The parties cross-move for summary judgment.  Accordingly, two interlocking standards of review apply in this case: the general summary-judgment standard and the specific standard that applies to judicial review of decisions by ERISA plan administrators.  *See MacNally v. Life Ins. Co. of N. Am.*, No. 07-CV-4432 PJS/JJG, 2009 WL 1458275, at *22 (D. Minn. May 26, 2009).

### 1. Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

### 2. ERISA

The summary plan description ("SPD") gives ReliaStar the discretion both to interpret the policy and to determine eligibility for benefits. Plan at RS1471. "SPDs are considered part of the ERISA plan documents." *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 949 (8th Cir. 1994). When an ERISA plan authorizes the administrator to determine eligibility for benefits, courts review the administrator's eligibility determinations for an abuse of discretion. *Pralutsky v. Metro. Life Ins. Co.,* 435 F.3d 833, 837 (8th Cir. 2006). Under that standard, an administrator's decision will be upheld if it was reasonable, and an administrator's decision will be deemed reasonable if the decision is supported by substantial evidence. *Wakkinen v. UNUM Life Ins. Co. of Am.,* 531 F.3d 575, 583 (8th Cir. 2008). Substantial evidence means "more than a scintilla but less than a preponderance." *Id.* (citation and quotations omitted). Even if the Court would have made a different decision as an initial matter, the administrator's decision will be upheld if a reasonable person could have reached a similar decision. *Id.*

## B. Disability Determination

In a typical ERISA case, the plan administrator determines that the participant is not entitled to benefits, the participant sues, and the court reviews the administrator's decision for abuse of discretion. Unfortunately, though, this is far from a typical case due to the aggressive tactical maneuvering of both ReliaStar and Werb.

For its part, after vacating the 2006 decision of its claim department that Werb was not disabled, ReliaStar decided in 2008 *not* to make a determination about whether Werb was disabled, but instead to deny his claim for benefits based solely on the 2002 settlement agreement. Werb then filed this lawsuit — a lawsuit that asked this Court to review ReliaStar's decision that Werb had released his claim for LTD benefits in the settlement agreement. A year into the litigation, though, in a transparent attempt to help its attorneys win this lawsuit, ReliaStar suddenly announced that it was conducting a "voluntary appeal review," and, following that review, announced that it was denying Werb's claim for a second reason: because he was not disabled. ReliaStar now takes the position that (1) it decided both in 2006 and in 2009 to deny benefits to Werb because he was not disabled; (2) both of those decisions are properly before this Court; and (3) the Court should now review those decisions for abuse of discretion.

In response, Werb initially argued that "[t]he sole issue before the court is the interpretation of the release" and that neither of ReliaStar's two determinations about his disability are properly before the Court. Werb Br. S.J. 5. After giving the matter more thought, though, Werb changed course and argued in his reply brief and at oral argument that, while the *2009* decision of ReliaStar is not properly before the Court, the *2006* decision *is* reviewable, and should be reviewed de novo. Werb Reply S.J. 4. Specifically, Werb argued that because

ReliaStar failed to act on Werb's appeal of the 2006 determination, Eighth Circuit precedent requires the Court to review that determination — and to do so de novo. *Id.* at 6-7.

The maneuvering of ReliaStar and Werb has tied this case into a procedural knot, and the Court, in trying to untie that knot, has found little guidance in the case law. Ultimately, though, the Court determines that Werb was right the first time: The only issue before the Court is whether Werb released his claim for LTD benefits when he signed the settlement agreement. Neither of the two determinations regarding Werb's medical condition is properly before the Court.

### 1. The 2009 Decision

Beginning first with the 2009 decision, the Court agrees with Werb that the decision must be disregarded in this proceeding.

As described above, ReliaStar denied Werb's claim for LTD benefits in 2008 for one reason and one reason only: because, in ReliaStar's view, Werb had released his claim when he signed the settlement agreement in 2002. Both the claim department and the appeal committee made clear that ReliaStar had *not* made a determination about whether Werb was disabled. Briscoe Aff. Ex. P at RS0087; Briscoe Aff. Ex. S at RS0024. When Werb sought review of ReliaStar's decision by filing this lawsuit in 2008, the only question presented to the Court was whether Werb had released his claim for LTD benefits in the settlement agreement.

After the parties had litigated that question for almost a year, ReliaStar apparently decided that it did not like its chances of prevailing based on the decision that it had made, so ReliaStar announced that it would make a new decision, based on evidence (Dr. Wagner's report) that did not even exist at the time that Werb's lawsuit was filed. ReliaStar admitted that nothing

in the policy or in its claims manual authorized such a "voluntary appeal review," and that it had

no guidelines or protocols for undertaking such a review. Briscoe Aff. Ex. W at RS1628. Kari

Briscoe, the case manager responsible for Werb's claim on appeal, testified at her deposition that

she could not recall another instance when a "voluntary appeal review" had been conducted

solely on the initiative of ReliaStar. Briscoe Dep. 20.

The result of this review was predictable: ReliaStar informed Werb by letter dated

October 19, 2009 that he was not entitled to LTD benefits, not only because he had released his

claim for such benefits in the settlement agreement, but also because he had failed to demonstrate

that he was disabled. Ten days later, armed with ReliaStar's new decision, ReliaStar's attorney

moved for summary judgment. ReliaStar now argues that its 2009 decision is properly before the

Court, and that the decision should be reviewed for abuse of discretion.

The Court disagrees. In commencing a "voluntary appeal review" out of the blue and

long after this lawsuit had been filed, ReliaStar appears to have acted more as Werb's adversary

than as his fiduciary. The plan-initiated "voluntary appeal review" conducted by ReliaStar was

not contemplated in ERISA, its implementing regulations, or the plan documents. To the

contrary, the review was commenced long after the deadlines set in ERISA's implementing

regulations and in the plan itself for issuing a decision on Werb's application and then on his

appeal. Moreover, the decision reached by the review was based in substantial part on a

document that was not part of the administrative record and that was authored by an expert hired

to assist ReliaStar's lawyers to win this lawsuit.

ERISA protects participants from such procedural irregularities. The statute (like the

policy itself) requires employee-benefit plans to adhere to certain deadlines in rendering

decisions on participants' claims and appeals.  29 C.F.R. § 2560.503-1, subd. 1(f) and (i); Policy at RS1471.  ERISA further requires employee-benefit plans to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."  29 U.S.C. § 1133(1).  These requirements "were intended to help claimants process their claims efficiently and fairly; they were not intended to be used by the [plan] as a smoke screen to shield itself from legitimate claims."  *Short v. Cent. States, Se. & Sw. Areas Pension Fund*, 729 F.2d 567, 575 (8th Cir. 1984) (internal quotations omitted).  Courts must not "permit ERISA claimants denied the timely and specific explanation to which the law entitles them to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation."  *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998).

ReliaStar argues that its 2009 decision is not fairly characterized as a post hoc rationale because Werb was told in 2006 that ReliaStar did not believe that he was disabled.  This argument ignores several key facts.  First, in 2006, the ReliaStar claim department found that Werb was not disabled for the six-month period beginning August 1, 1998.  Second, that decision was *vacated* by ReliaStar's appeal committee, and the matter was remanded to the claim department so that it could determine whether Werb was disabled for the six-month period beginning February 18, 1998, as Werb had claimed.  Third, neither the claim department nor the appeal committee ever decided that question; instead, they denied Werb's claim for LTD benefits based solely on the settlement agreement.  When, before Werb sues, ReliaStar tells him that it "has yet to make a determination on his disability," and then, after Werb sues, ReliaStar tells him (and this Court) that he is not entitled to LTD benefits because it has made a determination that

he is not disabled, ReliaStar has indeed provided a post hoc rationale for its decision to deny Werb's claim.

"A *post hoc* attempt to furnish a rationale for a denial of . . . benefits in order to avoid reversal on appeal, and thus meaningful review, diminishes the integrity of the [plan] and its administrators." *Short*, 729 F.2d at 575. "When reviewing a denial of benefits by an administrator who has discretion under an ERISA-regulated plan, a reviewing court 'must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales.'" *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (quoting *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir. 1999)). "[I]f a plan administrator attempts to gain a tactical advantage by proffering a new plan interpretation for the first time in litigation, then we are free to ignore it." *King*, 414 F.3d at 1006 n.4 (internal quotations omitted); *see also Marolt*, 146 F.3d at 620 (courts "are free to ignore ERISA plan interpretations that did not actually furnish the basis for a plan administrator's benefits decision."). Accordingly, the Court will ignore the decision made by ReliaStar in 2009.

## 2. The 2006 Decision

As noted, ReliaStar's claim department determined in 2006 that Werb had not been disabled during the six-month period beginning on August 1, 1998. Werb appealed that determination, arguing (1) that ReliaStar had used the incorrect date of disability, Briscoe Aff. Ex. N at RS0959; and (2) that the medical evidence demonstrated "a continuation and worsening of his health condition that prevent[ed] him from working," thus satisfying the total-disability requirement, *id*. at RS0957. In response, ReliaStar's appeal committee vacated the decision of

the claim department and remanded the matter so that the claim department could consider anew

Werb's claim for benefits, this time using an alleged disability date of February 18, 1998, rather

than August 1, 1998. At that point, the 2006 decision of the claim department became a dead

letter. ReliaStar's appeal committee had declared, in essence, that the 2006 decision of the claim

department was *not* the decision of ReliaStar, and that the claim department would have to start

over in considering Werb's claim for benefits

On remand, the claim department decided not to make a decision about whether Werb

was disabled. Instead, the claim department denied Werb's claim for benefits based solely on the

settlement agreement. The appeal committee upheld that denial, and, in doing so, again stressed

that ReliaStar had not made a decision about whether Werb was disabled. Obviously, then, when

Werb filed this lawsuit in 2008, the one and only decision of ReliaStar that Werb asked this

Court to review was ReliaStar's decision that Werb had released his claim for LTD benefits

when he signed the settlement agreement in 2002.

For that reason, ReliaStar's argument that the 2006 decision of its claim department is

properly before this Court is meritless. ReliaStar itself vacated that decision in 2007, and

ReliaStar itself informed Werb in 2008 that it "has yet to make a determination on his disability."

Briscoe Aff. Ex. S at RS0024. ReliaStar cannot tell Werb that it did not make a decision

regarding his disability, and then turn around and tell this Court that it did make a decision

regarding his disability.

This is exactly what Werb argued — emphatically and, in this Court's view, correctly —

in moving for summary judgment. But then Werb had second thoughts. Werb apparently

concluded that he would be better served if this Court, rather than remanding this case to

ReliaStar, would instead review ReliaStar's decision that Werb was not disabled (1) de novo and (2) without considering the independent medical record review conducted by Dr. Wagner. Werb thus argued in his reply brief that, although the *2009* decision of ReliaStar (the decision that relied on Dr. Wagner's report) was *not* properly before this Court, the *2006* decision of the claim department (the decision that was vacated by the appeal committee at Werb's behest) *was* properly before the Court, and should be reviewed de novo.

In support of the second of his two conflicting positions, Werb relies entirely on the decision of the Eighth Circuit in *Seman v. FMC Corp. Retirement Plan for Hourly Employees*, 334 F.3d 728, 733 (8th Cir. 2003). According to Werb, he properly appealed the 2006 decision of the claim department that he was not disabled, ReliaStar failed to timely act on his appeal, and therefore, under *Seman*, this Court must review the claim department's decision de novo.

Werb misreads *Seman*. In *Seman*, the plaintiff (Seman) applied for LTD benefits. Seman's employer, which served as the administrator of the plan, denied Seman's application, finding, among other things, that Seman was not totally and permanently disabled, as required by the plan. *Id*. at 731. The plan in *Seman* (like the plan here) gave the administrator authority to decide all questions of plan interpretation and eligibility. *Id*. at 732-33.

Seman appealed to the plan's review panel (the equivalent of ReliaStar's appeal committee). *Id*. at 731. Although the plan's governing documents gave the review panel a maximum of 120 days to issue a decision, the panel sat on Seman's appeal for more than 18 months without issuing a decision. *Id*. Seman got tired of waiting and sued under ERISA for wrongful denial of benefits. *Id*.

The trial court decided to review the decision of Seman's employer to deny his application for LTD benefits for abuse of discretion, and held that the employer had not abused its discretion in finding that Seman was not disabled. *Id*. at 731-32. On appeal, the Eighth Circuit held that the district court should have reviewed that finding de novo:

> When a plan administrator fails to render any decision whatsoever on a participant's application for benefits, it leaves the courts with nothing to review under any standard of review, so the matter must be sent back to the administrator for a decision. When a plan administrator denies a participant's initial application for benefits and the review panel fails to act on the participant's properly filed appeal, the administrator's decision is subject to judicial review, and the standard of review will be de novo rather than for abuse of discretion if the review panel's inaction raises serious doubts about the administrator's decision.

*Id*. at 733. Because Seman's initial application for benefits had been denied and the review panel had taken no action on Seman's properly filed appeal, the Eighth Circuit held that the employer's finding that Seman was not disabled should have been reviewed de novo. *Id*. at 733-34.

The differences between this case and *Seman* are significant. In *Seman*, the claim department decided that the participant was not disabled, the participant properly appealed that decision, and the appeal committee took no action on that appeal. In this case, by contrast, the claim department decided that the participant was not disabled, the participant properly appealed that decision, and the appeal committee vacated the decision of the claim department. On remand, the claim department made another decision. This time, the claim department decided that the participant had signed a settlement agreement that released his claim for LTD benefits, and thus the question of whether the participant was disabled was moot. The participant properly

appealed that decision, and the appeal committee *decided* that appeal:  It affirmed the decision of the claim department.

In short, in *Seman*, the claim department denied the participant's application for LTD benefits because he was not disabled, and the appeal committee did not act on the participant's appeal.  According to *Seman*, in such a situation, (1) the claim department's finding that the participant was not disabled is properly before the reviewing court, and (2) that finding should be reviewed de novo.  In this case, however, ReliaStar's claim department denied Werb's application for LTD benefits because he released his claim for such benefits in a settlement agreement, and ReliaStar's appeal committee affirmed that decision.  If the Court disagrees with ReliaStar and finds that Werb did not release his claim for LTD benefits, then the question will become whether Werb was disabled.  On that question, ReliaStar has "fail[ed] to render any decision whatsoever . . . leav[ing] the courts with nothing to review under any standard of review, so the matter must be sent back to the administrator for a decision."  *Id*. at 733.  In other words, if this Court finds that Werb did not release his claim for LTD benefits, *Seman* requires the Court to remand this matter to ReliaStar for a disability determination, rather than to review a vacated decision made by the claim department in 2006.[3]

---

[3]Werb also seems to argue that when ReliaStar denied his claim based on the settlement agreement, ReliaStar waived its right to deny his claim for any other reason if its determination regarding the settlement agreement was later reversed.  Werb cites no authority suggesting that when a plan administrator determines that it should deny a claim for LTD benefits for one reason, it must consider and decide all *other* grounds it might have for denying that claim, or later find that it has waived its ability to rely on those grounds.  *Cf. Urbania v. Cent. States Se. & Sw. Pension Fund*, 421 F.3d 580, 587 (7th Cir. 2005) (ERISA plan administrator's failure to cite a certain previously mentioned ground for denying benefits in its final denial letter "did not abandon the ground by omission").

*C. The 2002 Release*

The Court now turns to the question of whether Werb did, in fact, release his claim for

LTD benefits when he signed the settlement agreement on January 21, 2002.  The settlement

agreement contained the following provision:

> 2.  FULL AND FINAL SETTLEMENT OF OTHER CLAIMS
> Michael J. Werb, on behalf of himself, his heirs, successors,
> assigns, and fiduciaries, *does hereby fully and forever release,*
> *acquit and discharge Goodrich and its insurers from any and all*
> *liability* now accrued or hereafter to accrue on any and all claims,
> or causes of action he now or may hereafter have or claim to have
> against Goodrich, or its insurers, including, but not limited to
> claims under federal or state law prohibiting discrimination or
> retaliatory action based on handicap, gender or race, under the
> Americans with Disability [sic] Act, *and pursuant to ERISA.*
> Goodrich, on behalf of itself and its subsidiaries and assigns, does
> hereby fully release, acquit and discharge Michael J. Werb from
> any and all liability related to Claim No. 97-591116 and Case Nos.
> 00-381 and 99-184, except as otherwise provided.

Briscoe Aff. Ex. Q at RS 00038 (emphasis added).

Defendants contend that the release bars any claim for LTD benefits against Goodrich or

against ReliaStar, which characterizes itself as an "insurer" of Goodrich.  Briscoe Aff. Ex. S at

RS0024.  The parties agree that ReliaStar's decision that Werb released his claim for LTD

benefits should be reviewed de novo.

### 1.  Goodrich

There is no question that the release on its face covers Werb's claim against Goodrich.

The release "fully and forever release[s], acquit[s] and discharge[s] Goodrich . . . from any and

all liability now accrued or hereafter to accrue on any and all claims, or causes of action [Werb]

now or may hereafter have or claim to have against Goodrich . . . pursuant to ERISA."  Briscoe

Aff. Ex. Q at 0038.  In seeking LTD benefits, Werb is making a "claim[] . . . against Goodrich . . . pursuant to ERISA," and Werb released all such claims in the settlement agreement.  Werb contends, however, that the settlement agreement is invalid insofar as it purports to release his ERISA claims.

An agreement to release ERISA claims is enforceable if the release is made knowingly and voluntarily.  *Leavitt v. Nw. Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir. 1990).  To determine whether a release was knowing and voluntary, the Court "must examine the totality of the circumstances in which the release was signed to ensure the fiduciary did not obtain the release in violation of its duties to the beneficiary." *Id*.  In *Leavitt*, the Eighth Circuit identified a number of factors that the Court must consider in its totality-of-the-circumstances analysis, and the parties agree that the *Leavitt* factors control here.  The *Leavitt* factors include: (1) the beneficiary's education and business experience; (2) the beneficiary's input in negotiating the terms of the settlement; (3) the clarity of the release language; (4) the amount of time the beneficiary had for deliberation before signing the release; (5) whether the beneficiary read the release and considered its terms before signing it; (6) whether the beneficiary knew of his rights under the plan and the relevant facts when he signed the release; (7) whether the beneficiary was given an opportunity to consult with an attorney before signing the release; (8) whether the beneficiary received adequate compensation for the release; and (9) whether the beneficiary's release was induced by improper conduct. *Id*.  Werb asserted at oral argument that in applying the *Leavitt* factors, the Court is limited to the record that was before ReliaStar at the time that it concluded that Werb had released his claim for LTD benefits.  Defendants agreed that the Court could apply the *Leavitt* factors based on the administrative record.

Virtually all of the *Leavitt* factors cut against Werb and in favor of Goodrich. Werb is highly educated and experienced in business. He has a Bachelor of Science and a Masters degree in business. Briscoe Aff. Ex. D at RS0533. He held a high-level position at Goodrich as part of the 11-member senior management joint staff, a group that "provides leadership and direction" to the multi-million-dollar international business. Briscoe Aff. Ex. W at RS1408.

The language of the release is crystal clear, at least as it applies to Goodrich. The first paragraph describes the desire of Goodrich and Werb to settle Werb's worker's-compensation claim as well as "any and all other claims which [Werb] has or could have against Goodrich in regard to his employment there." Briscoe Aff. Ex. Q at RS0036. That paragraph continues, "This settlement shall fully and forever settle the above-referenced Workers' Compensation claim, as well as all rights to compensation and medical benefits for any and all injuries and occupational diseases." *Id*. The release contains a paragraph that describes a "Full And Final Settlement Of All Workers' Compensation Claims" and a second, separate paragraph that describes a "Full And Final Settlement Of Other Claims." *Id*. at RS0038. In the "Other Claims" paragraph, Werb "fully and forever release[s] . . . Goodrich and its insurers from any and all liability . . . on any and all claims." *Id*. The paragraph explicitly identifies claims "pursuant to ERISA" as being covered by the release. *Id*.

Werb knew of his right to claim LTD benefits when he signed the release in 2002. He intended to apply for LTD benefits in July 1998, but was instructed to wait until he had resolved his Social Security and worker's-compensation claims. Briscoe Aff. Ex. R at RS0047. There is no evidence that Werb ever came to believe that he was not entitled to LTD benefits.

Werb had ample opportunity to consult with an attorney before signing the release. He was represented at the time by two attorneys — one for his worker's-compensation claim and one for his automobile-liability claims. Both attorneys reviewed the release and presumably discussed the release with Werb. Briscoe Aff. Ex. R at RS0047, RS0052.

Werb received a total of $66,500 in consideration for signing the release. Briscoe Aff. Ex. Q at RS0037. He maintains that the consideration he received for releasing his ERISA claim was inadequate because, under the original draft of the release, he was to receive $65,000 to release only his worker's-compensation claim. Under the final version of the release, he received $66,500 to release not only his worker's-compensation claim, but also his automobile-liability claims and all other claims (including his ERISA claim). According to Werb, the extra $1,500 was intended as consideration for his release of the automobile-liability claims, and thus he received nothing for the release of his ERISA claim. Briscoe Aff. Ex. R at RS0047. But the settlement language does not reflect such an allocation; it simply states that Werb would receive a total of $66,500 in exchange for his release of "any and all claims" against Goodrich and its insurers. The Court cannot find that consideration to be inadequate, especially given that the parties could reasonably have determined in 2002 that Werb would have a difficult time establishing his entitlement to *any* LTD benefits.

There is no evidence about the extent of Werb's input in negotiating the settlement, the amount of time Werb had to deliberate before signing the release, or whether Werb read the release and considered its terms before signing it. Certainly, there is no evidence that Werb's decision was rushed, or that Werb failed to read the release before signing it. Moreover, there is no evidence that Werb was induced to release claims against Goodrich or its insurers by any

improper conduct. In sum, the evidence in the record all supports the validity of Werb's release

of his ERISA claims against Goodrich. For that reason, the Court will grant Goodrich's motion

for summary judgment.

## 2. ReliaStar

That leaves ReliaStar. It is clear that, in the settlement agreement, Werb released his

ERISA claims against "Goodrich and its insurers." What is less clear is whether ReliaStar is an

"insurer" of Goodrich — or, put differently, whether Goodrich is an "insured" of ReliaStar.

Unfortunately, "insured" is not a defined term within the policy. Based on the evidence in the

record — most notably, the policy itself — the Court concludes that there remains a genuine

issue of material fact as to whether ReliaStar is an "insurer" of Goodrich.

Werb argues that ReliaStar's "insured" is not Goodrich, but the "B.F. Goodrich Long-

Term Disability Plan." Letter from Mark M. Nolan, Attorney for Michael Werb, to Judge Patrick

J. Schiltz (Dec. 23, 2009) at 1. In a letter to the Court filed shortly after oral argument, Werb

reasoned, "The only entity which ReliaStar could have insured was the B.F. Goodrich Long-

Term Disability Plan as it is the only entity that had an obligation to pay disability benefits. This

is especially true in the instant case where the employee pays 50% of the premium." *Id*. Werb

does not cite any policy provision in support of his position. He does point to deposition

testimony given by Briscoe (ReliaStar's appeals case manager) that the "insured" under the

policy is the "BF Goodrich disability plan." Briscoe Dep. 10. The Court also notes that

ReliaStar's August 2007 denial letter states that the LTD policy "insures BF Goodrich's LTD

benefit plan." Briscoe Aff. Ex. P at RS0087. But while those statements help Werb, they find

little or no support in the language of the policy. A review of the plan documents reveals no

mention whatsoever of the B.F. Goodrich Long-Term Disability Plan, which seems odd if, as

Werb argues, the plan is the "insured" under the ReliaStar policy.

ReliaStar, of course, argues that it is indeed the "insurer" of Goodrich — i.e., that

Goodrich (and not, or not just, the plan) is the "insured" under the policy.  But ReliaStar cited no

evidence in support of its contention until oral argument, when it pointed to two policy

provisions (found at RS1455 and RS1470).  But those two provisions identify "The BFGoodrich

Company" as the "Policyholder," not as the "insured."  "Policyholder" is defined as "The

BFGoodrich Company," Policy at RS1470,[4] and that defined term is used over 40 times

throughout the policy, each time in reference to Goodrich.  By contrast, the policy never

explicitly identifies Goodrich as the "insured."  The fact that the policy identifies Goodrich as the

"policyholder" lends some support to ReliaStar's argument that it insured Goodrich — as

typically a policyholder is also an insured — but it hardly resolves the matter.  After all, the

person who holds an insurance policy is often not insured under that policy.  (For example, a

parent may take out a policy on a child, or a corporation on an executive.)

The policy contains only one sentence that could possibly be understood to refer to the

policyholder — that is, "The BFGoodrich Company" — as the "insured."  In a paragraph entitled

"Reinstatement," the policy provides, "ReliaStar Life will not reinstate this Group Policy after it

has terminated.  To become insured after insurance has stopped, the Policyholder must submit a

new application."  Policy at RS1457.  There are at least two possible readings of the second

---

[4]"The BFGoodrich Company" is evidently a former name of Goodrich Corporation: the
parties to the release are Werb and "The BF Goodrich Company, now known as Goodrich
Corporation."  Briscoe Aff. Ex. Q at RS0036.  The parties, and consequently the Court, treat
Goodrich Corporation and The B.F. Goodrich Company (with or without internal spaces or
periods) as descriptions of the same entity.

sentence.  First, it might mean that for the policyholder (Goodrich) to "become insured after insurance has stopped" it must submit a new application.  This, in turn, might imply that the policyholder was insured *before* the insurance stopped.  An alternate reading is that in order for a plan participant (such as Werb) to become insured again after insurance has stopped, the policyholder (Goodrich) must submit a new application.  On this reading, ReliaStar insures the participants, not Goodrich.

Viewed in the context of the full policy, this single suggestion that Goodrich may be ReliaStar's insured is anomalous.  The policy otherwise consistently distinguishes between the policyholder, on the one hand, and the insured, on the other.  The policy uses the word "insured" more than 20 times.  With the lone exception identified above, the word "insured" consistently refers not to Goodrich, but to the individuals (such as Werb) who are employed by Goodrich and who are participating in Goodrich's LTD plan.  For example, the policy contains a section entitled "Part B.  Insured's Benefits Section," which describes the benefits available to claimants under the policy and the limitations to which those benefits are subject.  Policy at RS1459-70. The policy defines "You" and "Your" as "an employee insured for Employee's Insurance under the Group Policy," Policy at RS1470, and contains numerous references to "your insurance" or "employee's insurance."  *See, e.g.*, Policy at RS1464, 1463.  The policy contains no comparable reference to Goodrich's insurance.

In short, the evidence does not permit the Court to rule as a matter of law that ReliaStar either was or was not an "insurer" of Goodrich.  And thus the Court cannot rule as a matter of law that Werb's LTD claims against ReliaStar either were or were not released when Werb signed the settlement agreement in 2002.  For that reason, the Court must deny both the

summary-judgment motion of Werb and the summary-judgment motion of ReliaStar insofar as those motions pertain to Werb's claims against ReliaStar.

## D. The Next Step

At first blush, it would appear that the Court should simply set this matter for trial, so that the Court can take evidence and determine whether ReliaStar is an "insurer" of Goodrich for purposes of the settlement agreement. But the Court has concerns about such a course of action.

First, it is clear that, prior to moving for summary judgment, the parties gave little thought to the question of who, exactly, is liable to Werb — Goodrich, ReliaStar, or the plan — and who, exactly, was released under the 2002 settlement agreement. It may be that an additional period of discovery — and perhaps another round of dispositive motions — is appropriate.

Second, Werb may wish to move to amend his complaint to add the plan as a defendant — if, indeed, the plan can be sued as a defendant. *Cf. Slayhi v. High-Tech Inst., Inc.*, No. 06-CV-2210 (PJS/JJG), 2007 WL 4284859, at *7 (D. Minn. Dec. 3, 2007) ("in some cases . . . the 'plan' simply does not exist as an entity"). The parties agree that Werb's claims against the plan (if he has any claims against the plan) were not released under the 2002 settlement agreement. The plan may wish to resist being added as a defendant, perhaps by arguing that any claim against it is barred by the statute of limitations. *See Abdel v. U.S. Bancorp*, 457 F.3d 877, 880 (8th Cir. 2006) ("ERISA contains no limitations period, and Minnesota's two-year statute of limitations governing contract actions to recover unpaid benefits applies."). If the plan makes such an argument, Werb may wish to respond by contending that his claim against the plan should be deemed to relate back under Fed. R. Civ. P. 15(c)(1).

Third, if the plan is added as a defendant, then even if ReliaStar is found to be an "insurer" of Goodrich (and thus released under the settlement agreement), this matter may have to be remanded to the plan to consider Werb's claim for LTD benefits on the merits. And if ReliaStar is found not to be an "insurer" of Goodrich, then this matter may have to be remanded to ReliaStar to consider Werb's claim for LTD benefits on the merits. Under the circumstances, it may make sense for ReliaStar to consent to a remand of Werb's claims, so that ReliaStar can make a procedurally proper determination about whether Werb was disabled (without prejudice to ReliaStar's argument that Werb's claims against it have been released). Such a determination might help to expedite the ultimate resolution of this litigation.

In light of the uncertainties caused by Werb's failure to name the plan as a defendant, the tactical maneuvering of the parties, and the parties' belated recognition of the importance of the issues identified above, the Court will defer setting this matter for trial and instead invite the parties to appear before the Court in the near future for a status conference. The parties should contact the chambers of the undersigned (rather than the chambers of the magistrate judge) to schedule that status conference.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff Michael Werb's motion for summary judgment [Docket No. 19] is DENIED.

2. Defendants' motion for summary judgment [Docket No. 13] is GRANTED IN PART AND DENIED IN PART. Specifically,

a.     Defendants' motion for summary judgment is GRANTED with respect to

           defendant Goodrich Corporation.  Plaintiff's claims against defendant

           Goodrich Corporation are DISMISSED WITH PREJUDICE AND ON

           THE MERITS.

    b.     Defendants' motion for summary judgment is DENIED with respect to

           defendant ReliaStar Life Insurance Company.

3.     The parties are ORDERED to contact the calendar clerk of the undersigned to

       schedule an expedited status conference.

Dated:  August <u>17</u>, 2010                          <u>s/Patrick J. Schiltz</u>
                                                       Patrick J. Schiltz
                                                       United States District Judge