## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Michael Werb,                                       Civil No. 08-5126 (SRN/JJG)

               Plaintiff,

    v.                                              **MEMORANDUM OPINION
                                                       AND ORDER**

ReliaStar Life Insurance Company, and
the Goodrich Long Term Disability Plan,

               Defendants.

---

Mark M. Nolan, Nolan, Thompson & Leighton, 710 Lawson Commons, 380 St. Peter St., St. Paul, MN 55102, for Plaintiff.

William D. Hittler, and Gregory A. Bromen, Nilan Johnson Lewis PA, 400 One Financial Plaza, 120 South Sixth St., Minneapolis, MN 55802, for Defendants.

---

SUSAN RICHARD NELSON, United States District Judge

     This matter is before the court on the parties' cross-motions for summary judgment (Doc. Nos. 58 & 63).  For the reasons stated below, this Court grants in part and denies as moot in part Plaintiff Michael Werb's motion, and denies in part and denies as moot in part  Defendants ReliaStar Life Insurance Company and the Goodrich Long Term Disability Plan's motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

     Werb was employed by Goodrich Corporation and participated in its long-term disability ("LTD") benefit plan.[1]  Goodrich funded the plan, which is governed by the

---

[1]     The B.F. Goodrich Company became Goodrich Corporation in 2001.  (Doc. continue...

Employee Retirement Income Security Act ("ERISA"), through an insurance policy issued by ReliaStar Life Insurance Company.

As the result of a work-related car accident in 1997, Werb experienced ongoing disabling pain.[2]  ReliaStar denied his claim for LTD benefits, arguing that Werb had released his claim in a 2002 settlement agreement with Goodrich.  In September 2008, Werb thus initiated this action against ReliaStar and Goodrich challenging the denial. (Doc. No. 1.)[3]  Almost a year later, during the pendency of the case, ReliaStar informed Werb that it was voluntarily reconsidering his claim for LTD benefits on the merits, and then denied his claim again, not only because it viewed Werb as having released his claim for such benefits, but also because it concluded that Werb had failed to establish that he was disabled.

The parties then cross-moved for summary judgment.  The Court (Judge Schiltz) denied Werb's motion and denied Defendants' motion insofar as judgment was sought by ReliaStar but granted the motion insofar as judgment was sought by Goodrich.  Werb v. ReliaStar Life Ins. Co., No. 08-CV-5126 (PJS/JJG), 2010 WL 3269974 (D. Minn. Aug.

---

[1] ...continue
No. 52, ¶ 5.)

[2]      The facts and procedural history are recounted in greater detail in the Court's (J. Schiltz) earlier summary judgment ruling.  Werb v. ReliaStar Life Ins. Co., No. 08-CV-5126 (PJS/JJG), 2010 WL 3269974 (D. Minn. Aug. 17, 2010).

[3]      Neither the original Complaint, nor the Amended Complaint, enumerates specific counts.  Nor do either expressly identify the statutory basis of the claim (or claims).  But based on the relief requested, that is, recovery of benefits plus prejudgment interest, attorney's fees and costs and "such other and further relief," it appears to be a claim under 29 U.S.C. § 1132(a)(1)(B).  See infra Section II.B.

17, 2010).  As the Court explained, the only issue before the Court at that time was whether Werb released his claim for LTD benefits.  Neither of ReliaStar's two decisions that Werb was not disabled was properly before the Court.  Id. at *6 (addressing the "procedural knot" into which the case had been tied).

With respect to the release, the Court noted that, on its face, the settlement indisputably released Werb's claim against Goodrich.  Under that agreement, Werb released Goodrich "from any and all liability now accrued or hereafter to accrue on any and all claims, or causes of action [Werb] now or may hereafter have or claim to have against Goodrich, or its insurers, including but not limited to claims . . . pursuant to ERISA."  (Doc. No. 61-9.)

Werb contended, however, that the release was invalid insofar as it purported to release his ERISA claims.  Applying the factors delineated in Leavitt v. Northwestern Bell Tel. Co., which guide the decision whether an agreement to release ERISA claims is made knowingly and voluntarily, the Court noted that "[v]irtually all of the Leavitt factors cut against Werb and in favor of Goodrich."  Werb, 2010 WL 3269974, at *12.  The Court concluded that the release extended to Werb's ERISA claims against Goodrich, and thus granted Goodrich's motion for summary judgment.  Id. at *13.

With respect to ReliaStar, however, the Court noted that Werb clearly released his ERISA claims against "Goodrich and its insurers," but that it was less clear whether ReliaStar was an "insurer" and who was the "insured" party.  Id.  While ReliaStar contended that it was the insurer of Goodrich (or at least that the plan was not the *only*

insured), Werb had argued that ReliaStar's "insured is not Goodrich, but the disability

plan." Id. The Court, noting that the policy did not define "insured," concluded that a

genuine issue of material fact remained as to whether ReliaStar was an "insurer" of

Goodrich. Id. at *14.

With respect to ReliaStar's position that it is the "insurer of Goodrich," the Court

noted that two policy provisions repeatedly and consistently identify Goodrich as the

"Policyholder," and never explicitly as the "insured," further noting that the policyholder

is often not the insured. Id. Moreover, the policy, with one exception, consistently

distinguished between the policyholder, on the one hand, and the insured, on the other,

and that "insured" consistently (with that one exception) refers to individual employees

participating in the LTD plan. Id. at *14.

The Court observed that in the usual situation, it would likely set the remaining

issues for trial. Id. But based on its concerns (1) that the parties had given little thought

to the question of who, exactly, is liable to Werb and who, exactly, was released under the

2002 settlement agreement, such that the parties might want "an additional period of

discovery–and perhaps another round of dispositive motions," (2) that Werb may wish to

amend the complaint to add the plan as a defendant, assuming it could be sued as a

defendant, and (3) if the plan would be added as a defendant, and if ReliaStar is found to

be an "insurer" of Goodrich and thereby released, the matter may have to be remanded to

consider Werb's claim for LTD benefits on the merits, the Court deferred any trial at that

time. Id. at *14-15. Thus, in addition to denying Werb's motion, granting that portion of

Defendants' motion seeking dismissal of Werb's claims against Goodrich, and denying the remaining portion, that with respect to ReliaStar, the Court permitted the parties to consider those options.   Id. at *14.

The parties largely agreed on a course of action.  The Court thus ordered them to complete discovery on the question of whether ReliaStar is an "insurer" of Goodrich, remanded the matter to ReliaStar for a determination by its claims department of whether Werb was disabled, and directed them to then file any motion to amend the Complaint and motions for summary judgment.  (Doc. No. 46.)

On remand to the insurer, ReliaStar determined that Werb is disabled.  (Doc. No. 60, at 11.)  The parties also conducted additional discovery.  Finally, pursuant to a stipulation, Werb amended his Complaint to delete Goodrich as a defendant and to add the plan in its place.  (Doc. Nos. 47, 47-2, 49.)[4]

Werb and the Defendants (with the plan substituted for Goodrich) now cross-move, again, for summary judgment.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Defendants contend the motions are governed by the usual summary judgment standard and that the only question here is one of contract interpretation–a question of law.  (Doc. No. 60, at 11-12.)  Similarly, Werb argues that because the sole remaining issue before the Court is a legal issue of interpreting the release, "any standard of review

_____

[4]     On January 12, 2011, this action was reassigned to the undersigned.  (Doc. No. 55.)

language in the Plan," which is separate from the release, is not controlling.  (Doc. No. 71, at 9.)  Werb further asserts that because Defendants have relied on the release as an affirmative defense, they bear the burden of proof.  (Id.)

Now that ReliaStar has found Werb to be disabled, this Court is not reviewing any decision that Werb is not disabled.  The issue is now confined to whether the release encompasses Werb's ERISA claims against ReliaStar and the plan.  Thus, the usual summary judgment standard applies.  The movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a mater of law."  Fed. R. Civ. P. 56(a).

**B.      Scope of the Release**

Defendants contend that the "sole remaining issue" is whether the 2002 release extends to Werb's claim for disability benefits.  More precisely, they argue that the issue is whether that release applies to the specific relevant entity against which such a claim would be directed.  (Doc. No. 60, at 1.)  They argue that Judge Schiltz's earlier rulings constitute the "law of the case" so as to preclude any further consideration of whether that release is valid and encompasses the claims at issue.  (Id.)

The Court agrees that Judge Schiltz decided the issue of whether the release was valid and enforceable, at least with respect to releasing any ERISA claims against Goodrich.  Judge Schiltz's discussion of the Leavitt factors, however, occurs only in the separately-denominated section of his opinion that concerns Goodrich, not that which addresses claims against ReliaStar.  Werb, 2010 WL 3269974, at *12 ("Virtually all of

the *Leavitt* factors cut against Werb and in favor of Goodrich.")[5]

As Defendants frame the issue, "Werb seeks benefits from Goodrich's long-term disability plan, which is insured by ReliaStar." (Doc. No. 60, at 1.) Werb, in contrast, maintains that his claim "is against ReliaStar, and ReliaStar insures [him], not Goodrich." (Doc. No. 71, at 11.) As Judge Schiltz observed earlier, the present dispute appears to be somewhat unique in that it requires the Court "to distinguish between the employer, the plan, and the insurer," because the release applies by its terms to claims against "the company and the insurer but doesn't release the plan" *per se*, whereas "in a typical case the insurer doesn't care whether the lawsuit is against the plan or the insurer. The money is going to come out of the same pocket." (Doc. No. 79 (Dec. 14, 2009 Hearing Transcript), at 34.) Resolution of the issue here, however, requires the Court to discern the scope of the particular release agreed to by Werb and Goodrich in the context of Goodrich's ERISA plan and the relationships between Goodrich, the plan, and ReliaStar.

The 2002 release executed by Werb contains two separately-denominated release provisions: (1) a "full and final settlement of all workers' compensation claims," and (2)

---

[5]     Some of the Leavitt factors pertain solely to the plaintiff, such that Judge Schiltz's analysis with respect to those factors would also apply in evaluating whether Werb released his ERISA claims against ReliaStar. But at least one factor focuses not on the parties but on the release itself. For example, the third factor concerns the clarity of the release language. Judge Schiltz observed that "[t]he language of the release is crystal clear, at least as it applies to Goodrich." Id. at *12. And other factors arguably implicate specific defendants. For example, the eighth factor concerns the consideration received by the plaintiff, and adequate consideration from one defendant does not necessarily mean that the consideration, if any, from a different defendant is adequate. And the ninth factor concerns whether the release was induced by any improper conduct of a particular defendant. Thus, it is not clear that Judge Schiltz implicitly found that the release is also valid and enforceable against ReliaStar.

a "full and final settlement of other claims." (Doc. No. 61-9, at 4.)[6]  Under the workers'

compensation provision, Werb released "Goodrich, its affiliates, subsidiaries, divisions,

officers, employees, agents, successors and assigns (hereinafter collectively referred to as

'Goodrich') and *its insurers*, from any and all liability . . . against Goodrich, its insurers,

the Commission and the Bureau" arising from injuries occurring during Werb's

employment.  (Id. (emphasis added).)  And under the "other claims" provision, Werb

released "Goodrich and its insurers from any and all liability" on any claims "against

Goodrich, or its insurers, including, but not limited to claims . . . *pursuant to ERISA*."

(Id. (emphasis added).)

Accordingly, with respect to the plan, Defendants–noting that "Goodrich" is

defined broadly to include, among others, Goodrich's "affiliates"–argue that "the Plan

was clearly" released, regardless of whether "an ERISA plan is a distinct entity or merely

part of the employer." (Doc. No. 60, at 1-2.)  Defendants thus assert that it is not

necessary here to resolve the question "whether the 'plan' is an entity *distinct* from the

employer, or whether it is simply a part *of* the employer."  (Id. at 15 (emphases in

original).)

And with respect to ReliaStar, Defendants argue that the insurer was released

because (1) ReliaStar is either the insurer of Goodrich (and thus expressly released

---

[6]       The agreement results from the settlement of Werb's workers compensation claim and underinsured motorist claims against Goodrich.  Werb v. ReliaStar Life Ins. Co., No. 08-CV-5126 (PJS/JJG), 2010 WL 3269974, *2 (D. Minn. Aug. 17, 2010).  Werb had separately also sought benefits under Social Security's disability program.  Id. at *3. At the time of the 2001 negotiations regarding the release and at the time of its execution in 2002, Werb had not yet formally sought disability benefits under the plan.

pursuant to the clause "Goodrich, or its insurers"), or the insurer of the Plan (and thus

released as an "affiliate" or "division" of Goodrich pursuant to the expansive definitional

provision regarding Goodrich); and (2) because the Plan is released, so is ReliaStar as its

liability to Werb "flows through the Plan" and the "ReliaStar policy is merely a

mechanism for *the Plan* to provide benefits." (Id. at 2 (emphasis in original).) They

further argue that Werb is estopped from arguing that ReliaStar is not the Plan's insurer

because" the Amended Complaint asserts that the "'ReliaStar policy insured the Plan for

benefits to employees covered by the Plan.'" (Doc. No. 74, at 4 (quoting Doc. No. 49, ¶

10).) Finally, Defendants note that under an additional provision entitled "Permanent

Disability," Werb acknowledged that the payment he received under the settlement and

release "takes into account the possibility of any future disability, including potential

wage loss or need for medical treatment," such that he agreed to accept that sum "in lieu

of any compensation or benefits" that might otherwise become due in the future. (Doc.

No. 61-9, at 5.)

       In response, Werb argues that ReliaStar insures Werb (as an employee), not

Goodrich, or, in the alternative, that Werb did not voluntarily and knowingly release his

claim for LTD benefits against ReliaStar. (Doc. No. 71, at 2-3.) Werb thus contends that

the release of ERISA claims against Goodrich and its insurers does not apply to his claim

for LTD benefits because such a claim is brought by Werb–as the insured–"against the

Plan and the insurer, ReliaStar," not against Goodrich, which is not the insured, but rather

the policyholder. (Id. at 4.) Werb asserts that ReliaStar admits as much because it plead

that it "'issued the policy to [Goodrich] as plan sponsor for the plan for the benefit of

eligible Goodrich employees.'"  (Id. (quoting Doc. No. 52 (ReliaStar's Amended

Answer) ¶ 9).)

### 1.    Plan Administrators, *De Facto* Plan Administrators, and Claim Administrators

The policy identifies Goodrich as "the Plan Administrator."  (Doc. No. 72, Ex. 4,

at RS001470.)  Judge Schiltz found, however, that *ReliaStar* was "the plan

administrator."  Werb, 2010 WL 3269974, at 1.  As will be discussed, ERISA defines (or

provides bases for identifying) the "administrator," but does not expressly define either

"plan administrator" or "claims administrator."  Nevertheless, courts have recognized that

there are two distinct functions performed under an ERISA benefits plan:  (1) making

"plan-level decisions about covering employees (e.g., whether employee $x$ will be

covered at all–for *anything*–under the [disability] policy)," including "decisions about

premium collection and employee enrollment," and (2) making "claim-level decisions

about paying benefits (e.g., to what extent employee $x$'s visit to doctor $y$ on date $z$ is

covered."  Slayhi v. High-Tech Institute, Inc., No. 06-CV-2210 (PJS/JJG), 2007 WL

4284859, *3, *7 (D. Minn. Dec. 3, 2007).  And lacking any statutory guidance on this

distinction, some courts have identified what they deem "*de facto* plan administrators."

See infra note 14.  Here, the policy denominates a "plan administrator" but not a "claims

administrator," even though, as will be seen, the policy leaves no doubt that ReliaStar is

the "insurer" of Goodrich's employees and the party authorized to decide claims for

disability benefits.  Judge Schiltz plainly recognized that ReliaStar–not Goodrich, or even

"the plan"–was the entity deciding whether Werb was entitled to benefits under the plan. Werb, 2010 WL 3269974, at 1.  Accordingly, Judge Schiltz presumably meant that ReliaStar was in effect the *de facto* administrator or the claims administrator.  And regardless of the labels that the courts have developed to fill in the statutory gaps, it is clear that Werb's present action alleging that he was improperly denied disability benefits is a claim properly directed at ReliaStar, the party that made the decision.  Finally, because ReliaStar insured the plan participants such as Werb, and not either Goodrich or the plan, Werb did not release his ERISA claim for disability benefits.

## 2.    ReliaStar As "Insurer"

In this dispute over the scope of a release of claims that derive from rights to benefits provided under a disability insurance policy that the employer obtained for the benefit of its employees, the Court begins with the terms of the policy itself, that is, the "insurance contract between ReliaStar Life and the Policyholder."  (Doc. No. 72, Ex. 4, at RS001469.)[7]  As Judge Schiltz previously observed, the policy plainly identifies Goodrich as the "policyholder."  (Id. at RS001455, RS001470.)  Moreover, the policy differentiates between the policyholder and the "insureds," noting that although the "Policyholder sends the premiums to ReliaStar," the "insureds" may pay part of the cost. (Id. at RS001456-57.)  As Judge Schiltz also observed, although a policyholder is often also the insured, there is no necessity that it be so, as "a parent may take out a policy on a child, or a corporation on an executive."  Werb, 2010 WL 3269974, at *13.

---

[7]    ERISA itself does not define either "insurer" or "insured."  ERISA also seems to contemplate some variety in terms of the structure of benefit plans.

And it also seems clear that the insureds are confined to individual employees participating in the plan–and do not also extend to their employer–insofar as the policy refers to "the insured's lifetime," and the fact that ReliaStar "issues a certificate to the Policyholder for delivery to the insured" that "describes the insured's benefits." (Doc. No. 72, Ex. 4, at RS001457-58.) Moreover, the policy requires that "to become insured," the "employee" must meet certain conditions, all of which make sense only with respect to individual employees. (Id.) And with respect to ReliaStar's waiver of premiums, "it is the Policyholder's responsibility to refund" any contribution made by the "employee insured under [the policy]" to that employee. (Id.) And an "employee" is one "employed by the Policyholder," including those "employees of companies and affiliates controlled by the Policyholder." (Id.)

Accordingly, at least based on the consistent terms of the policy itself–the document that governed the relationship between ReliaStar as insurer and Goodrich as the "policyholder" and that by extension also governed employees' rights under the policy–employees such as Werb, and only such individual employees, are the "insureds."[8]

_____

[8] Defendants argue that Werb may not now contend that he was an "insured" of ReliaStar because his Amended Complaint asserts that the "ReliaStar policy insured the Plan for benefits to employees covered by the Plan." (Doc. No. 60, at 18 (quoting Doc. No. 49, ¶ 10); Doc. No. 74 at 4.) Defendants rely on National Surety Corp. v. Ranger Ins. Co., for the proposition that "[f]actual statements in a party's pleadings are generally binding on that party unless the pleading is amended." 260 F.3d 881, 886 (8th Cir. 2001). But it is far from clear in this context that the identity of the "insured" is a question of fact. Insofar as construing the disability policy, which is a contract of insurance, is a question of law, the conclusion that ReliaStar insured participants such as Werb is not a factual determination. Moreover, here it is not one that Werb, or any party, has the authority to determine via a pleading where the policy plainly provides otherwise.

The Court recognizes that, in appropriate circumstances, there can be more than one insured (or type of insured) under a particular policy, but Defendants' argument that Goodrich was also an insured is untenable in the face of the policy terms.[9]

Thus, with employees such as Werb as the insureds, and ReliaStar the insurer, Goodrich is properly identified as the "Policyholder" (and, at least nominally, the "Plan Administrator" but plainly not the actual claims administrator)–in effect, an intermediary between the insured and the insurer.  Goodrich, the employer, sought to provide a benefit to its employees, and did so not by setting up a self-insured benefit plan, but rather by obtaining a disability policy from an insurer to provide the benefits to its employees. Accordingly, where, as here, the insurer assesses claims of disability and denies benefits, the insured employee's action to receive such benefits is appropriately directed at the insurer.

Granted, some courts have ruled that the appropriate defendant–and perhaps the sole appropriate defendant–in an ERISA action seeking benefits is the plan "administrator."  See, e.g., Layes v. Mead Corp. 132 F.3d 1246, 1249 (8th Cir. 1998) (dismissing claim against employer where insurer "was at all relevant times the sole

---

[9]     Granted, as Laura Olsen, a Goodrich employee who produces and maintains group policies, testified, Goodrich might possess an "insurable interest in the policy" and might derive a "benefit" in the form of the ability "to offer a comprehensive package of compensation, to attract and retain quality employees," and if such employees become disabled, Goodrich derives the "rehabilitative benefits" of the policy that allow the workers to "get back to work" for the company.  (Doc. No. 72, Ex. 5.)  But such indirect "benefits" to Goodrich do not render it an "insured."  Goodrich itself may not become disabled or receive disability benefits, the main attributes of an "insured" under a disability policy.

administrator of the" disability plan).[10]  In Layes, however, the court did not differentiate

between a "plan administrator" and a "claims administrator," presumably because the

policy did not expressly designate the employer as "plan administrator" even though the

insurer was the party making the claims-level decisions.  Id. (noting that insurer

"determined that [claimant] was not totally disabled under the terms of the plan").

    ERISA does not define "administrator" in terms of what one does, but rather

provides various means of identifying who or what is the "administrator."  29 U.S.C. §

1002(16)(A)(I) (providing that the "administrator" is generally "the person specifically so

designated by the terms of the instrument under which the plan is operated," and that if

none is so designated, then the "plan sponsor").  Here, the plan expressly designates

Goodrich as the "Plan Administrator."  (Doc. No. 72, Ex. 4, at RS001470.)  Thus,

---

[10]    In addition, some courts adhere to the view that ERISA benefit actions may
be brought *only* against the "plan" itself.  This view is largely traced back to the Ninth
Circuit's *per curiam* decision in Gelardi v. Pertec Computer Corp., 761 F.2d 1323 (9th
Cir. 1985).  See Slayhi v. High-Tech Institute, Inc., No. 06-CV-2210 (PJS/JJG), 2007 WL
4284859, *6 (D. Minn. Dec. 3, 2007) (referring to the "oft-cited opinion" in Gelardi,
which, however, lacked any "accompanying analysis").  In Gelardi, the court stated that
"ERISA permits suits to recover benefits only against the Plan as an entity."  761 F.2d at
1324 (citing 29 U.S.C. § 1132(a)(1)(B), (d)).  But it is possible to read this
statement–consistent with the statute–as meaning, if one brings suit against a plan, one
may sue the plan only *as an entity*, not also its individual trustees or administrators,
unless their personal liability is separately established.  29 U.S.C. § 1332(d).  Moreover,
an individual administrator of a plan must be distinguished from a "plan administrator"
that is not an individual but rather the company itself or some special sub-entity such as a
committee to which the company or insurer has delegated the authority to administer
ERISA benefit claims.  E.g., Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir. 1988)
(noting that plan "provides for administration by the Central Board of Administration . . .
and a Local Pension Committee at each plant").  And, in any event, the Eighth Circuit
does not limit benefit actions to the plan itself.  Slayhi, 2007 WL 4284859, at *7 ("[T]he
Eighth Circuit has rejected the notion that only a 'plan' can be sued under §
1132(a)(1)(B).").

Goodrich could be an appropriate defendant, at least with respect to claims regarding plan-level decisions.

Nevertheless, the Plan also plainly reveals that ReliaStar "will process the claim and make payment or issue a denial notice." (Id. at RS001471.) ReliaStar is also the entity that "will consider requests for an appeal of a denied claim," and the "[r]eview of claim denials and final decisions on appeal are the responsibility of ReliaStar Life." (Id.) Finally, it is clear that ReliaStar's role and function with respect to administering claims is not merely ministerial. "ReliaStar has final discretionary authority to determine all questions of eligibility and status and to interpret and construe the terms of this policy(ies) of insurance." (Id.)[11] ReliaStar is thus the actual claims administrator of the plan, despite the designation of Goodrich as "Plan Administrator."[12]

---

[11]   This action is thus distinguishable from Garren v. John Hancock Mut. Life Ins. Co., 114 F.3d 186 (11th Cir. 1997) (concluding that employer, not insurer, "is the proper party defendant"). In Garren, while the employer was designated as "plan administrator," the employer also had the "'exclusive responsibility and complete discretionary authority to control the operation and administration of this Plan . . . and to resolve all interpretative, equitable and other questions that shall arise in the operation of this Plan.'" Id. at 187. Moreover, the insurer did "not exercise any discretion, responsibility or control over the administration of the Plan." Id.

[12]   ReliaStar is thus perhaps the de facto plan administrator. See Jones v. UOP, 16 F.3d 141, 145 (7th Cir. 1994) (Posner, J.) (identifying circuits that recognize "'de facto' plan administrators"). The Eighth Circuit has yet to rule on whether to recognize de facto administrators. Hall v. Lhaco, Inc., 140 F.3d 1190, 1195 (8th Cir. 1998) ("We do not deem this to be the appropriate case upon which to decide the question . . . . Thus, we must reserve for another time the question of whether a party other than the one designated in ERISA plan documents can be sued under § 5023(a)(1)(B) as a 'de facto' plan administrator."). Defendants rely on Brown v. J.B. Hunt Trans. Servs., Inc., 586 F.3d 1079 (8th Cir. 2009), to contend that "there is no such thing as a de facto administrator." (Doc. No. 60, at 15 n.7.) But in Brown, the court only ruled that Ross
continue...

"[T]he proper defendant under § 1132(a)(1)(B) is the party with authority, under the relevant plan documents, to pay benefit claims from plan assets." Slayhi v. High-Tech Institute, Inc., No. 06-CV-2210 (PJS/JJG), 2007 WL 4284859, *10 (D. Minn. Dec. 3, 2007) (concluding that, under the facts of that case, the insurer, not the employer, was the proper defendant).[13] Accordingly, on the particular facts presented here, the Court is

---

[12]...continue

precluded the argument that a claim under Section 1132(c), which "only provides a cause of action against plan administrators," could be brought against the insurer where the employer was designated as plan administrator. And in Ross, the court simply ruled that where there was a designated Plan Administrator, which had the sole statutory responsibility to provide the plan documents to plan participants, the insurer's role as "claims administrator" "did not transform it into the Plan Administrator." Ross, 285 F.3d at 743. Thus, the Eighth Circuit apparently has differentiated between a "plan administrator" and a "claims administrator." Id. at 739 (noting that while plan designated employer as "Plan Administrator," insurer served as "claims administrator," which "was responsible for the administration of claims, including the handling and processing of claims forwarded to it by" the employer). Insofar as ReliaStar is the entity deciding whether Werb is entitled to disability benefits, his action challenging the denial of such benefits would necessarily have to be directed at ReliaStar, which then presumably is the "claims administrator." Defendants admit as much. (Doc. No. 52 (Answer to Amended Complaint), ¶ 8 ("ReliaStar was the claims administrator."), ¶ 11 ("[T]he Plan Administrator delegated to ReliaStar as claims administrator final discretionary authority" regarding the policy.) In any event, regardless of titles, ReliaStar is the entity "with authority, under the relevant plan documents, to pay benefit claims from plan assets." Slayhi v. High-Tech Institute, Inc., No. 06-CV-2210 (PJS/JJG), 2007 WL 4284859, *10 (D. Minn. Dec. 3, 2007). The policy begins by stating that ReliaStar "will pay the benefits according to the terms and conditions of this Group Policy." (Doc. No. 72, Ex. 4, at RS001455.)

[13]        In Slayhi, the plan documents did *not* specifically designate any administrator. Accordingly, the employer, as "plan sponsor," was, "by operation of law, the 'administrator.'" 2007 WL 4284859, at *7. The court noted that the insurer was "entirely responsible under the plan for claim-level decisions about benefits, [while the employer was] responsible for plan-level decisions about premium collection and employee enrollment." Id. Reviewing the Eighth Circuit case law, Judge Schiltz concluded that "Layes left open the . . . question whether and to what extent a party that

continue...

unable to conclude that Goodrich is the sole proper Defendant.  And in light of the fact

that the release plainly covers any of Werb's ERISA claims against Goodrich, the Court

need not determine whether Goodrich is an appropriate Defendant.  But it is clear enough

that Werb's present ERISA claim, which he asserts lies against ReliaStar (and maybe also

against the plan) regarding its denial of his claim for benefits, need not be dismissed on

the grounds that ReliaStar is not a proper Defendant.

Nevertheless, Defendants rely on general ERISA case law to argue that the plan

itself "is generally the proper defendant in a benefits action under ERISA" (Doc. No. 60,

at 14); the plan is often a separate entity distinct from the employer (id. at 15); but even if

separate, it is an "affiliate" of the employer (id. at 16); ReliaStar is the insurer of the *plan*

(Doc. No. 74, at 5); such that ReliaStar was released as the insurer of the plan (whether

the plan is part of Goodrich or a separate, but affiliated, entity) (id. at 5-6).  Defendants

thus contend that "Werb's argument simply ignores the statutory framework of ERISA

and the definition of Goodrich contained within the [release]."  (Doc. No. 74 at 6.)

The Court does not agree that ERISA clearly resolves this question.  As noted

above, ERISA does not clearly address what parties–employer, benefits plan, or

insurer–are proper defendants, and does not even define "insurer," "insured" or

"affiliate," three of the key terms of the release.  ERISA provides a cause of action to "a

participant or beneficiary" to "recover benefits due to him under the terms of his plan, to

---

[13]...continue

in fact administers a plan, but that is not identified by the statute as a plan administrator,
can be sued under 1132(a)(1)(B)."  Id. at *8.

enforce his rights under the terms of the plan, or to clarify his rights to future benefits
under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  ERISA also provides that

> [a]n employee benefit plan may sue or be sued under this subchapter as an
> entity.  Service . . . upon a trustee or an administrator of an employee
> benefit plan in his capacity as such shall constitute service upon the
> employee benefit plan.  In a case where a plan has not designated in the
> summary plan description of the plan an individual as agent for the service
> of legal process, service upon the Secretary shall constitute such service.

Id. § 1132(d)(1).  Likewise, a money judgment "against an employee benefit plan shall be
enforceable only against the plan as an entity and shall not be enforceable against any
other person unless liability against such person is established in his individual capacity
under this subchapter."  Id. § 1132(d)(2).  It appears that this provision simply recognizes
a plan as a legal entity capable of suing and being sued in its own name.[14]  And that the
individual plan trustee or administrator is thus not liable absent some other legal basis for
such individual liability.

Some courts, however, have construed this provision as *limiting* ERISA actions for
plan benefits solely to the plan itself.  See, e.g., Slayhi v. High-Tech Institute, Inc., 2007
WL 4284859, *6-10 (D. Minn. Dec. 3, 2007) (addressing issue of permissible defendants
in ERISA benefit actions).  But this view misreads the statute.  Id. at *6 ("[T]he text of §

---

[14]     As a general matter, individuals and some entities such as corporations are
legal persons capable of suing and being sued in their own name.  In contrast,
unincorporated divisions of a corporation may not sue or be sued in their own name.  E.g.,
United States v. ITT Blackburn Co., A Division of ITT, 824 F.2d 628, 631 (8th Cir. 1987)
("[A]n unincorporated division cannot be sued or indicted, as it is not a legal entity.").  In
the ERISA context, Congress thus sought to accord benefit "plans"–which are neither
individuals, corporations, nor otherwise any other conventional juridical entity–the
authority to sue and be sued.

1132(d) does not compel the conclusion that ERISA plans, as entities, are the only possible defendants in suits for benefits.").  And it also ignores the reality that "[i]n order to obtain complete relief, a successful plaintiff may need to assert claims against both a plan and its sponsor and/or administrator and/or issuer of an insurance policy that provides benefits under the plan."  Ross v. Rail Car America Group Disability Income Plan, 285 F.3d 735, 741 n.7 (8th Cir. 2002), quoted in Slayhi, 2007 WL 4284859, at *5-6 (concluding that "ERISA plans are among the possible defendants in suits for benefits" (emphasis in original)).[15]  "ERISA itself does not identify the proper defendant in suits for benefits."  Slayhi, 2007 WL 4284859, at *6.  And "in some cases, . . . the 'plan' simply does not exist as an entity."  Id. at *7.

In sum, the Court rejects Defendants' argument that ReliaStar was released on the grounds that it was the insurer of Goodrich or of the plan.  To the contrary, ReliaStar is a proper defendant and was the insurer of individual plan participants such as Werb.  This leaves the question of whether the plan itself was released.[16]

---

[15]     In Ross, the Eighth Circuit did not hold that an action to recover ERISA benefits may be brought only against the relevant plan.  It simply stated, consistent with Section 1132(d), that the "plan itself is ordinarily liable for benefits payable under the terms of the plan and is thus the primary defendant in a section 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)] action."  285 F.3d at 740 (emphasis added).  Ross is not controlling here because the court expressly ruled that the plaintiff's claim was not one for benefits under Section 1132(a)(1)(B), but rather a claim against the plan sponsor and policyholder under Section 1132(a)(3) regarding amendments to the plan, not a denial of benefits.  Id. 740-41.  And even if the statement regarding Section 1132(a)(1)(B) claims was not dicta, the court merely cited the questionable line of authority emanating from the Ninth Circuit's decision in Gelardi.

[16]     There is no question that, generally, a plan may be sued in an action for
continue...

### 3.    "Affiliates" of Goodrich

Finally, Defendants also argue that the Plan was an "affiliate" of Goodrich.  The

release plainly defines "Goodrich" to extend beyond the company itself to also include

"its affiliates, subsidiaries, divisions, officers, employees, agents, successors and assigns."

(Doc. No. 61-9, at 4.)  Defendants thus presumably contend that Werb's claims against

the plan were released.  Perhaps more importantly, they thus contend that Werb's claims

against ReliaStar were released, under the assumption that ReliaStar insured the plan.  In

other words, by releasing Goodrich, Werb also necessarily released the plan, and by

releasing Goodrich's insurers, Werb also necessarily released ReliaStar, as the plan's

insurer.  But the Court has rejected a key component of this presumption, that is, that

ReliaStar insured the plan.  Thus, it is not clear whether Defendants' argument that the

plan is either a part of Goodrich or its affiliate is effectively moot.  But since the plan is

now formally a party to this action, the Court will address the argument.

In the general corporate context, an "affiliate" is usually a separate corporate entity

that is nonetheless related by ownership to the main corporate entity.  Black's Law

Dictionary 59 (7th ed.) (defining "affiliate" as a "corporation that is related to another

corporation by shareholdings or other means of control").  For example, a parent

corporation, a subsidiary corporation and sibling ("sister" or "brother") corporations (that

---

[16]...continue

ERISA benefits.  29 U.S.C. § 1132(d).  But whether a particular plan is a proper
defendant in a specific action presumably would turn on its precise role and the nature of
the claim.  ERISA provides for a variety of causes of action by a plan "participant" or
"beneficiary" such as Werb other than one under Subsection 1132(a)(1)(B) to recover
benefits.  29 U.S.C. § 1132(a)(1), 1132(a)(2), 1132(a)(3), 1132(a)(4), 1132(c).

is, those sharing ownership by a common parent) are affiliates. Id. ("a subsidiary, parent, or sibling corporation").  A division of a corporation, in contrast, is not separately incorporated, but rather only a component part of the single corporate entity.

Here, the reference to "affiliates" deviates slightly from this general understanding by apparently not including "subsidiaries" within "affiliates," but it does not by its express terms necessarily extend to a disability insurance plan.  Furthermore, a disability plan is presumably not a separately incorporated entity, and there is nothing in the record remotely suggesting that Goodrich's plan was some sort of wholly-owned subsidiary.  And it is difficult to understand how a benefit plan could be a "division" of a corporation as it is not analogous to an operating division of a company.  All of the individuals and entities included within the broad definitional scope of "Goodrich" are those that are owned, controlled, or employed by the company *per se*, or those whose rights would be derived from those of the company by merger or sale (its "successors" and "assigns").  A "benefit plan," in contrast, while enjoying the status of a juridical entity capable of being sued "as an entity," 29 U.S.C. § 1132(d), is not a conventional "affiliate" in the general law of corporate groups.  And nothing in either the release or the policy addresses whether the plan could be an "affiliate" of Goodrich.[17]

But this Court need not resolve that question because even if the plan is an "affiliate" of Goodrich, Werb's action is mainly against ReliaStar, which is neither an

---

[17]     Some courts, however, have concluded that benefit plans are "affiliates" of the company that establishes and sponsors the plans.  E.g. Christian v. Vought Aircraft Industries, Inc., 2010 WL 4065482, *8 (E.D.N.C. Oct. 15, 2010) (collecting cases).

"affiliate" of Goodrich nor its insurer.  Even if the Plan would be released, Werb's claim for disability benefits would be paid by ReliaStar, as the policy plainly indicates.  To the extent that the plan might yet be involved in the process of paying such benefits, it seems clear enough that the plan–even if released in terms of whatever liability it might itself have had to Werb–continues to be a defendant in this action such that it may facilitate ReliaStar's payment of benefits to Werb.  Not only is there no motion to dismiss the plan as an inappropriate defendant, Defendants in fact stipulated to the substitution of the plan for Goodrich.  (Doc. No. 47.)

### C.    Attorney Fees and Costs

Finally, Plaintiff requests an award of attorney fees and costs.  ERISA provides that in actions by plan participants or beneficiaries, "the court in its discretion may allow a reasonable attorneys's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  The Eighth Circuit has rejected any presumption in favor of awarding fees and costs to ERISA plaintiffs.  Martin v. Arkansas Blue Cross and Blue Shield, 299 F.3d 966, 971-72 (8th Cir. 2002) (en banc).  The court referenced the five Westerhaus factors that provide the district court with a general framework in which to determine if fees and costs should be awarded.  Id. at 972.  These factors are:

> "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties could deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve s significant legal q[ue]stion regarding ERISA itself; and (5) the relative merits of the parties' positions."

Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir. 1984) (quoting Iron Workers Local

No. 272 v. Bowen, 624 F.2d 1255, 1266 (5th Cir. 1980)).  Accord Hardt v. Reliance Std.

Life Ins. Co., ___ U.S. ___, 130 S. Ct. 2149, 2156-58 & n.8 (2010) (clarifying that such

factors do not control resolution of the initial requirement of "some success on the

merits," but not foreclosing "the possibility that once a claimant has satisfied this

requirement, and thus becomes eligible for a fees award under § 1132(g)(1), a court may

consider the five factors" delineated by the court below as well as in Westerhaus).

Here, Werb has achieved the requisite success on the merits.  Hardt, 130 S. Ct. at

2156-58.  But much of the litigation before the Court concerned contract-law issues

regarding the scope of the release, rather than the ERISA question of whether Werb was

disabled.  Accordingly, the Court shall permit Werb to recover that portion of his fees and

costs that (1) is attributable to the issue of whether he was disabled on the merits, and (2)

was incurred from the time ReliaStar announced it would reconsider its original decision

to the time it declared him disabled.  Werb shall file within twenty days of the date of this

Order an affidavit identifying such fees and costs.  Defendants may file within ten days

thereafter any objections.  The Court will then rule on the issue without argument.

## III.   CONCLUSION

ReliaStar, as the actual claims administrator, has now found Werb disabled,

leaving only the question of whether Werb's release of Goodrich, his employer, also

released his ERISA claims against ReliaStar.  The Court concludes that the release of

Goodrich, its affiliates, and its insurers, does not extend to Werb's claim for benefits

because ReliaStar is the insurer of Werb, not Goodrich.

**IV.    ORDER**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.    Defendants' motion for summary judgment [Doc. No. 58] is **DENIED IN**

**PART** (insofar as it seeks judgment on ReliaStar's affirmative defense that Werb released

his ERISA claims), and **DENIED AS MOOT IN PART** (insofar as it seeks judgment on

the Plan's affirmative defense that Werb released his ERISA claims); and

2.    Plaintiff's motion for summary judgment [Doc. No. 63] is **GRANTED IN**

**PART** (as to ReliaStar) and **DENIED AS MOOT IN PART** (as to the Plan).

Dated:   January 20, 2012                     ___ s/ Susan Richard Nelson ___
                                              SUSAN RICHARD NELSON
                                              United States District Judge